IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARON LaROSA,

                    Plaintiff,


          vs.                                          Case No. 05-1304-JTM


GALE A. NORTON, Secretary of the
Department of the Interior,

                    Defendant.


MEMORANDUM AND ORDER


This is an action by plaintiff Sharon LaRosa, a former temporary United States Park Ranger, against her former employer, the United States Department of the Interior, represented by defendant Gale A. Norton, alleging that she was subjected to illegal gender- and pregnancy-based discrimination. The court has previously granted a motion to dismiss filed by the defendant. (Dkt. No. 11). Since the motion raised matters outside the pleadings, the court treated the motion as one for summary judgment. Now before the court is the defendant's second motion for summary judgment relief.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.

1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The court excludes from the following requested findings of fact any assertions which are premised on affidavit statements containing hearsay beyond the knowledge of the affiant, or reflect the unsubstantiated personal belief of a third party that the acts of another were motivated by gender-based animus.

**Findings of Fact**

Plaintiff LaRosa was a temporary Park Ranger for the National Park Service at the Tallgrass Prairie Preserve in Cottonwood Falls, Kansas during the Park's summer-fall 2003 work schedule.

LaRosa has advanced two claims — that she was the subject of gender discrimination under Title VII (Count 1) and that defendant violated the Pregnancy Discrimination Act (Count 2).  She claimed that after she took time off for the birth of her daughter, she was not allowed to complete

the rest of her term as a Ranger, and that her supervisor, Heather Brown, allowed two male temporary employees (Billy Robb and Ron Clark) to "split" their seasons, but refused her request. LaRosa alleged that her position was left open and filled by a non-pregnant employee.

On March 10, 2006, the District Court granted defendant Norton's Motion to Dismiss Count 2. (Dkt. No. 11). The motion to dismiss presented facts outside the pleadings and the court treated the motion as one for summary judgment.  LaRosa failed to controvert any of the facts set forth by Norton in her Motion to Dismiss.  The court accordingly rendered specific findings of  fact, including determinations that LaRosa, like other temporary Park Rangers, had no right to work a set number of hours or to work a particular schedule during the 2003 season; that her appointment was temporary and expired on its own terms; that she was placed on intermittent status at her own request; that she was not discharged; that she did not apply for re-employment for the 2004 season, but chose to relocate from Kansas to Wyoming; that she has no expectation of future employment; and that she was not denied a modified duty assignment under circumstances that would give rise to an inference of pregnancy discrimination.

LaRosa, a female, worked for the Park Service as a Park Ranger at Tallgrass Prairie National Preserve in Cottonwood Falls, Kansas as a temporary employee. Billy Robb and Ron Clark, two males, also worked as temporary Park Rangers for the 2003 season at Tallgrass.  LaRosa, Robb, and Clark were supervised by Heather Brown, a female, who holds the position of Chief of Interpretation.  According to her 2004 EEO Complaint, LaRosa alleged that Brown discriminated against her based upon her gender when Brown refused to allow her to "split" her season, but "allowed" Robb and Clark to do so.

Under National Park Service rules, temporary employees receive appointments to work, at most, six months (1039 hours) over a twelve-month period. LaRosa and other Park Rangers were not guaranteed or promised they would work the maximum number of hours, but were instead subject to changes in their work schedule at the discretion of their employer who would determine

how best to utilize their services depending upon the operational needs of the Park, employee availability, staffing levels, and funding.

Although plaintiff attempts to controvert these suggested findings, the facts show they are uncontroverted.   While LaRosa contends that Park Rangers were generally permitted to complete their entire 1039-hour assignments, the plaintiff makes no showing that any of the previous temporary Rangers were similarly situated to her in taking two months off work during the assignment season.  Further, whether previous supervisors allowed temporary Rangers to complete their full assignments is insufficient to establish that this created some sort of binding obligation to guarantee each temporary Ranger that he or she would always work the entire 1039 hours, or bind the new supervisor, Heather Brown, to always do so.

It was Brown's responsibility, as the supervisor of the Park Rangers, to create work schedules for each Ranger for the 2003 season. Brown considered the following factors in creating work schedules: (1) the Park received nearly all its visitors during a seven-month period that began in late March or early April and concluded near the end of October. Brown needed most of the Park Ranger staff to work during this seven-month period when house and bus tours and interpretive programs were being offered; (2) while the "visitor season" lasted seven months, Park Rangers could only work a maximum of six months, so there was a need to overlap work schedules; (3) there was also a need to have a Ranger who would work in the spring and then again in the fall/winter, during periods that both preceded and followed the busiest visitor season. That Ranger would need to cover the early spring education and visitor service programs and to train the new seasonal employees in obtaining their commercial driver's licenses. After conclusion of the visitor season, that Ranger would work at the Park to bridge the gap between the end of the season until winter seasonal Rangers arrived at the Park and, also, to cover the interpretive division during this time; (4) the availability of employees had to be considered, including any personal requests for leave that might be made, even if it did not benefit the Park; (5) staff levels, and (6) available funding.

4

In attempting to controvert this fact, LaRosa cites deposition testimony that Brown was aware that some of her decisions resulted in favorable assignments for Robb and Clark. There is, however, no indication that Brown was rendering such favorable assignments on the basis of gender. The cited deposition testimony establishes only that Brown and Robb were aware that the results of the assignments ultimately were better for Clark and Robb. Robb has explicitly denied that any of Brown's decisions were motivated by gender. Examination of the treatment actually accorded to LaRosa shows that her work requests were (with one exception) granted, and that LaRosa did not receive materially worse assignments than Robb or Clark when the workers were similarly situated. Even if Brown favored Robb and Clark, there were other male Rangers who did not receive such treatment.

LaRosa does not controvert that, after considering the factors identified above, Brown scheduled the temporary Park Rangers to work during the 2003 season as either "full-time" Rangers, who worked a set schedule of 40 hours per week, with predetermined days off; "part-time" Rangers, who worked a set schedule of less than 40 hours per week, but a minimum of 16, with predetermined days off; and "on-call" or "intermittent" Rangers, who had no pre-scheduled tour of duty, but were subject to call. It is uncontroverted that these on-call Rangers were not promised that they would work a set number of hours during 2003. The intermittent Ranger could decline to come in and work if called. Intermittent Rangers were not eligible for leave. These classifications could be readjusted as the season went on to meet the needs of the Park.

In 2003, Brown granted LaRosa's request to work a full-time Tuesday through Saturday schedule, with Sunday and Monday as her days off. Brown planned to have LaRosa work during the busiest part of the season, which would conclude at the end of October.

During the first half of 2003, LaRosa, who was pregnant and nearing her delivery date, asked Brown for some time off before her baby arrived. LaRosa had also shared these same plans with her co-worker, Ron Clark. There is a factual controversy as to whether at the time LaRosa indicated a willingness to work in late 2003. However, the court assumes for summary judgment purposes that

LaRosa indicated the desire to work as an intermittent Ranger on October 8, 2003, when her OB/GYN, Dr. Stephen Sebree, authorized her to "resume normal activities," and she was not called in to work by Brown as often as she wanted to be.

The uncontroverted facts establish that there was no guarantee a temporary Ranger would work a full 1039 hours per season.  The evidence further demonstrates that Robb did not work 1039 hours, but instead only 856 hours, after having also taken time off to care for a newborn child.

LaRosa's request was granted and on August 10, 2003 a Notification of Personnel Action was created which memorialized the plaintiff's placement on intermittent or on-call work status at her request. LaRosa's intermittent status became effective on August 10, 2003. She then worked a flexible schedule that allowed her to work only if she felt well enough to do so. The Park's records show that LaRosa worked 36 hours the week of August 10. Her last day before taking her pregnancy leave was August 16.

On or about August 26, 2003, LaRosa gave birth by c-section to a baby girl.

Following the birth of her child and recovery from her c-section, LaRosa was not able to resume her on-call status until she met with Dr. Sebree, and was authorized on October 8, 2003, to "resume normal activities."

From October 1, 2003 to November 30, 2003, Billy Robb or Ron Clark were employed at the Park, but neither worked in on-call or intermittent status.

At Brown's request, LaRosa worked at the Park for a special event on October 11, 2003. She was paid for 7 hours of work.

On November 25, 2003, LaRosa received her yearly evaluation from Brown and was paid for two hours of work. LaRosa told Brown that she didn't think she would be available to work next year.

Thereafter, LaRosa's temporary appointment expired on its own terms.

According to LaRosa, she intended to remain in Kansas and work at the Park in 2004. However, as noted earlier, it is uncontroverted that LaRosa told Brown on November 25 that she

didn't think she would work at the Park in 2004.  On January 15, 2004, after hearing nothing more from LaRosa, Brown called her and told her that she had commenced the paperwork to conclude plaintiff's contract for the 2003 season, and that she would not be rehired.

LaRosa did not reapply for employment for the next visitation season. Rather, LaRosa relocated from Kansas to Wyoming.

It is uncontroverted that changes in Robb's work schedule were made for maternity-related reasons. In September of 2003, Robb changed from a full-time fixed work schedule to a part-time fixed work schedule in order to care for his newborn daughter. Robb felt that he had the same right to take time off due to the birth of his child that the mother of a child would have.  Robb also asked if there was any winter work available. Brown granted Robb's request to do some winter work, since she needed someone who had the necessary computer skills to prepare some Park brochures.

LaRosa made a similar request to do "winter work" after Brown had already received and granted Robb's request. Brown denied LaRosa's request because she had only one opportunity for winter work, Robb's request had already been granted, and the Park's budget would not accommodate bringing on an additional Ranger to work on the Park brochures. Even if LaRosa had asked to work on the brochures first, Brown would not have granted her request because LaRosa had not demonstrated to Brown that she had the necessary desktop publishing skills to work on these particular projects. Robb had previously demonstrated that he had the necessary skills. While Brown knew that LaRosa could use a computer, she had no knowledge that she had any particular experience with desktop publishing software.  Brown's decision was not motivated by any discriminatory animus toward LaRosa due to her gender.

The court has previously concluded that LaRosa has not shown that she was denied a modified duty assignment under circumstances which would give rise to an inference of pregnancy discrimination.

From October 1, 2003, to November 30, 2003, Robb worked a part-time fixed schedule. Robb did not work at the Park at all during the month of December 2003. He did not receive any compensation for that month from the Park.

Ron Clark is a retired teacher, having taught high school students in Great Bend, Kansas, for 32 years. He receives pension income from teaching. He presently resides in Council Grove, Kansas. Clark began employment with the Park in 1999, and has worked at the Park for seven years. He has more seniority as a Park Ranger than LaRosa.

In 1999 Clark was supervised by John Donaldson, a male. Donaldson continued to serve as Clark's supervisor until mid-May 2001 when Donaldson retired. Clark served as lead Ranger until July 1, 2001.

In 2001 Clark agreed to work a split season. He worked to July 1, 2001 and then returned to the Park in mid-September and worked until the end of November 2001. Clark recognized that the visitor season at the Park lasts seven months, but temporary employees have only enough work hours to cover six months of that time. Clark agreed to work the split season because he understood that there was a need to have a Ranger who could cover each end of the season.

While working the split season schedule, Clark trained newly employed Park Rangers, including LaRosa. Clark taught LaRosa the necessary driving skills so that she could obtain her commercial driver's license. He also gave LaRosa training on giving bus tours.

Brown came to the Park in late 2001 to interview for the position of Chief of Interpretation, and met Ron Clark as he was serving as a temporary supervisor. Brown believed Clark was quite capable in his position. She did not meet LaRosa during this visit.

Brown was chosen to be the Chief of Interpretation at the Park on or about November 14, 2001. Immediately after beginning her new job, and in assessing operational needs of the Park, Brown determined that she needed an employee who could split the season by working three months in the early spring and then three months in the late fall/winter to perform certain duties.

8

Brown decided to ask Clark to work the split schedule in 2002. Clark did not ask Brown if he could work this split season schedule. She asked him. Brown's decision to ask Clark, instead of LaRosa, to work this schedule was not motivated by any discriminatory animus toward LaRosa due to her gender. Brown had not even met LaRosa when she made this decision.

It is uncontroverted that Brown decided to ask Clark to continue to work the split season schedule he had previously worked because:

(1)  Brown had met Clark and was familiar with his experience and qualifications.

(2)  By the time she had to make scheduling arrangements for the early spring 2002 season, Brown did not yet know whether any of the other Rangers, including LaRosa, were qualified to provide training or if they were even interested in working this type of schedule.

(3)  Brown knew Clark was capable of performing the duties that would be required because he had already done so in the previous year for Donaldson.

(4)  Brown knew that Clark had pension income, which would make it less of a hardship for him to forgo income from July to part of September when he would not be working at the Park than it would be for other Rangers who were totally dependent on their Park earnings.

For most of the foregoing reasons, Brown asked Clark to work the same split season schedule for the 2003 season. Brown had not received any requests from other Rangers to replace Clark in order to work the split season schedule that had previously been assigned to him. Even if LaRosa had indicated that she wanted to replace Clark in working this schedule, Brown would not have selected her. Brown did not believe that LaRosa was qualified to work the split season as Brown did not believe she had ever trained others in obtaining their commercial driver's licenses or trained new Rangers. Clark had more seniority than LaRosa, and had trained LaRosa when she was a new employee.

Brown did not ask Clark to work the 2003 split season schedule, instead of LaRosa, due to any discriminatory animus toward LaRosa because of her gender.

Pursuant to his work schedule assignment, Clark did not work at the Park in the summer of 2003.

Clark, Robb, and LaRosa and all temporary Park Rangers were each paid approximately $12.31 per hour in 2003. From pay periods 16-20, (July 13-Sept. 20), Clark worked only 8 hours and was paid only $98.48 gross as part of the split season schedule that he was assigned. From pay periods 16-20, (July 13-Sept. 20), LaRosa worked 196 hours and was off work most of pay period 18 and all of pay periods 19-20. She was paid approximately $2,412.76 gross.

From October 1, 2003 to November 30, 2003, Clark worked a full-time fixed schedule. Clark worked approximately 64 hours during the month of December 2003 as part of his split season schedule to fill the gap while the winter seasonals were coming on duty at the Park. Clark was paid approximately $788.00 gross for his work in December 2003.

Even if LaRosa had indicated that she was available as an intermittent to work after the birth of her baby through the end of her employment contract, Brown would not have called her after October 26, 2003. The last bus tour for 2003 was concluded on October 26. The Park's visitation level was low during this time period and Brown did not need the services of an additional Ranger. Additionally, the Park's budget for payment of Ranger salaries could not accommodate an additional Ranger.

Brown did not call LaRosa to work due to any discriminatory animus toward LaRosa because of her gender.

**Conclusions of Law**

The plaintiff attempts to escape some of the court's earlier findings of fact claiming those findings went beyond the scope of the defendant's motion and are not binding, that the doctrine of the law of the case does not apply, that the provisions of Rule 56(d) are subject to modification, and

that manifest injustice will result.  None of these arguments has merit.  The defendant's motion to dismiss was directed at the claim for punitive damages and at Count 2 of the Complaint, which expansively cross-references and incorporates all of the claims advanced in LaRosa's Title VII claims (Dkt. No. 1, at ¶ 37), and explicitly sets forth the factual claims resolved by the court's order, including LaRosa's complaint about not being able to split her season, that she was terminated, and that she was damaged as a result of that termination.  The court's order was not limited to a determination that plaintiff had failed to exhaust her administrative remedies.  The evidence presented by the defendant in his memorandum in support of his motion addressed each of these critical facts.  The plaintiff failed to effectively controvert these facts, and the court properly set forth these factual findings in its order.  Nor did plaintiff file any timely motion for reconsideration after the entry of the court's order.

The court's earlier findings were appropriately rendered and, pursuant to Fed.R.Civ.Pr. 56(d) were set forth in an order "specifying the facts that appear without substantial controversy."  The plaintiff accurately notes that under Rule 54(b) rulings may be revisited prior to final judgment. However, this assumes that adequate cause is shown for such modification.  Nothing in Rule 54(b) or the other authorities cited by plaintiff vitiates or circumscribes the explicit provision in D.Kan.Rule 56(a) which provides that the facts submitted by the party moving for summary judgment "shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

Further, the plaintiff errs in suggesting that manifest injustice will result if the court follows its earlier findings since she will be "effectively denied her opportunity to dispute these purported 'facts.'" (Dkt. No. 43, at 14).  In fact, plaintiff has had at least three opportunities to dispute the defendant's facts — in her response to the defendant's first motion for summary judgment, in a motion for reconsideration following the court's order of March 10, 2006, and finally in her response to the defendant's second  motion for summary judgment.  In each of these opportunities she has failed to provide admissible evidence which would permit alternative findings.  This latest failure

11

renders plaintiff's various objections moot.  That is, whether the court looks back and incorporates the facts  uncontroverted by the plaintiff in the context of the first summary judgment motion (Dkt. No. 6), or looks solely at those facts directly established and uncontroverted by the plaintiff in response to the present summary judgment motion, (Dkt. No. 37), summary judgment on plaintiff's Title VII claims is appropriate.

The court here applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus, LaRosa  must show a prima facie case by presenting evidence that she is a member of a protected group, she suffered an adverse employment action, and similarly- situated non-minority employees were treated differently. *See Trujillo v. University of Colorado, Health Sciences Center*, 157 F.3d 1211, 1215 (10th Cir. 1998).  If she succeeds, the defendant Norton must articulate a legitimate reason for the adverse job action. *Wells v.Colo. Dep't. of Transp*., 325 F.3d 1205, 1212 (10th Cir. 2003). If defendant does so, LaRosa must then demonstrate that the reason provided by the defendant is a mere pretext for discrimination. *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff's claim fails because she has failed to demonstrate that she was subjected to an adverse employment action.  Such an action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). *See Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).

LaRosa complains that she was not permitted to "split" her 2003 season, while two male employees, Ron Clark and Billy Rob, were permitted to do so.  This is wrong for two reasons.  First, LaRosa requested and was given permission to go on on-call status.  Of the three employment statuses available to her (full-time, part-time, and on-call/intermittent), this was the only one which was practical for her, given the time of the pregnancy and LaRosa's accrued leave time.  LaRosa was not able to return to work until her doctor authorized her to "resume normal activities" on October 8, 2003.  The Park's active season ends in October.  But LaRosa did, in fact, split her season and

12

subsequently had two compensated work assignments in late 2003.  More importantly, in October and November of 2003, neither Clark nor Robb were on intermittent status.

LaRosa was subject to changes in her work schedule at the discretion of her supervisor, Heather Brown, who had the right and the responsibility to use LaRosa's services depending upon the operational needs of the Park.  LaRosa, like all the other temporary Park Rangers at the Park, was not guaranteed or promised that she would work a maximum number of hours.  Brown always retained the right to adjust LaRosa's work schedule if needed.

LaRosa went on her intermittent or on-call status on August 10, 2003, and remained in this status until her temporary appointment expired. Such workers have no pre-scheduled tour of duty, but are subject to call. Such workers have no right to demand a particular work schedule.  Her temporary appointment expired on its own terms, and LaRosa did not apply for re-employment for the next visitation season. Rather, LaRosa relocated from Kansas to Wyoming.

The plaintiff suggests that adverse impact is reflected in the fact that she was not permitted to return to work and complete her 1039 hours, while Robb was permitted to do so.  However, plaintiff has failed to show that Robb was indeed permitted to work a full 1039-hour season.  Indeed, the evidence shows that Robb, after leaving to take care of his newborn child, was also severely limited in his subsequent work, working only eight days in November and none at all in December.

The court also finds that the plaintiff has failed to show that any similarly situated male employees received preferential treatment.  Co-employees are "similarly situated" if they report to the same supervisor, are subject to the same standards governing their performance, and engage in conduct or performance similar to that of the plaintiff. *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997). The court also looks to other relevant employment circumstances applicable to the plaintiff and the putative similarly situated co-workers in determining whether they are indeed similarly situated. *David v. City and County of Denver*, 101 F.3d 1344, 1359-60 (10th Cir. 1996).

Clark and Robb were not similarly situated to LaRosa, who had at her own request been placed on intermittent or on-call work status on August 10, 2003.  Neither Clark nor Robb were on-

call workers.  LaRosa was unavailable for any work from August 26, 2003 through October 8, 2003. Clark worked a full-time fixed schedule in October and November, Robb worked a part-time schedule.  As an on-call or intermittent employee, LaRosa was in a work category different from Robb and Clark, since their pre-determined, set schedules meant they would work unless Brown called and told them not to report. LaRosa, on the other hand, as an on-call employee, would not work unless Brown called to have her come in.  LaRosa cannot demonstrate that Robb and Clark are similarly situated to her, and has failed to make a prima facie case.

Even assuming that LaRosa had presented a prima facie case, summary judgment would be appropriate because the defendant has presented a legitimate, non-discriminatory reason for any differential scheduling.  LaRosa complains that Brown permitted Robb to do some "winter work"in working on a Park brochure, while refusing her the opportunity to do such work. However, the evidence shows that Brown had already approved Robb's request for winter work prior to the plaintiff's request, and Brown knew that Robb had the necessary desktop publishing skills to complete the project. LaRosa suggests that this rationale was pretextual, since there are employment records showing that Brown knew LaRosa could also use a computer.  But the evidence fails to show either that LaRosa in fact had any experience with the particular desktop publishing software used to actually produce the brochure, or that Brown knew of such experience.

Clark had a history of working split seasons at the Park, but this history began before Brown ever met LaRosa.  The uncontroverted facts establish that non-discriminatory reasons existed for Brown's decision to allow Clark to split his seasons, including (1) that Brown had met Clark and was familiar with his experience and qualifications; (2) that Brown made the scheduling arrangements before she knew whether any of the other Rangers were qualified to provide training or if they were even interested in working this type of schedule; (3) that Brown knew Clark was capable of performing the duties that would be required because he had already done so in the previous year under the previous supervisor; and (4) that Brown knew Clark had pension income, which would make it less of a hardship for him to forgo income from July to September when he

14

would not be working at the Park.  For these same reasons, Brown asked Clark to continue with this schedule in successive seasons.

Accordingly, the court grants summary judgment and dismisses LaRosa's claims for gender-based discrimination under Title VII.

IT IS ACCORDINGLY ORDERED this 26th day of February, 2007 that the defendant's Motion for Summary Judgment and for Enforcement of Prior Order (Dkt. No. 37) is hereby granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

15